# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

EDDIE M. LACKEY,

              Petitioner,     :     Case No. 3:16-cv-458

   - vs -                         District Judge Walter Herbert Rice
                                       Magistrate Judge Michael R. Merz

WARDEN, London Correctional
Institution

                                 :

              Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits on the Petition (ECF No. 1) and Traverse (ECF No. 13). As ordered, Respondent filed the State Court Record (ECF No. 8) and an Answer/Return of Writ (ECF No. 9).

Lackey pleads the following Grounds for Relief:

> **GROUND 1:** The Trial Court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when it amended the B. indictment and denied Judgment of Acquittal due to insufficient evidence to establish Petitioner's identity.
>
> **Supporting Facts:** See Petition, ECF No. 1, PageID 17.
>
> **GROUND 2:** Due Process and Equal protection violated by allowing conviction based on testimony of co-conspirator alone.
>
> **Supporting Facts:** See Petition, ECF No. 1, PageID 26.
>
> **GROUND 3:** Violation of Due process and equal rights by allowing a conviction using prejudicial evidence.
>
> **Supporting Facts:** See Petition, ECF No. 1, PageID 29.

1

> **GROUND 4:** Second Appellate District violated due process and equal protection when Judicial and Prosecutorial misconduct committed.
>
> **Supporting Facts:** See Petition, ECF No.1, PageID 31.

(Petition, ECF No. 1.)

## Procedural and Factual History

Lackey was indicted by the Montgomery County Grand Jury in 2013 on one count of aggravated arson (Ohio Revised Code § 2909.02(A)(2)) (State Court Record, ECF No. 8, PageID 54). In 2014, the state filed an indictment B charging Lackey with conspiracy to commit aggravated arson on April 8 through April 12, 2013 (Ohio Revised Code § 2909.02(A) (1)) and attempted aggravated arson on April 8 through April 9, 2013 (Ohio Revised Code § 2909.02(A)(1)/2923.02(A)) (State Court Record, ECF No. 8, PageID 70).

The case proceeded to trial and after the State presented its case, the trial court granted Lackey's motion to dismiss indictment A (State Court Record, ECF No. 8, PageID 118). The remaining counts in the B Indictment were submitted to the jury. In addition, over objection from Lackey, the court allowed the State to amend the dates for the conspiracy count of indictment B. In June 2014, Lackey was found guilty of conspiracy to commit aggravated arson and attempted aggravated arson. The court merged the two counts and sentenced Lackey to 6 years in prison (State Court Record, ECF No. 8, PageID 122).

Lackey appealed to the Court of Appeals of Ohio, Second Appellate District, Montgomery County, raising the following assignments of errors:

1. The court's failure to dismiss appellant's B indictment was in direct violation of appellant's speedy trial rights.

2. The court's failure to sever the trials for the A and B indictments deprived appellant of a fair trial and due process of law.

3. Amending the B indictment after the closing of appellant's case–in–chief was a material change and deprived appellant of a fair trial and due process of law.

(Appellant's Brief, State Court Record, ECF No. 8, PageID 128.)

The Second District set forth the facts of this case on direct appeal as follows:

> **[\*P6]** At about 12:30 a.m. on April 9, 2013, Nozad Ibrahim ("Tony") was working as a clerk at a Sunoco gas station located at 3900 Salem Avenue in Dayton, Ohio. Tony was outside the business and saw two individuals walking next to the dumpster. They ran away when they saw him, and about 15 to 20 minutes later, Tony saw one of the men open the door, light a 24–oz Budweiser beer bottle filled with gas, and throw it in the door. Luckily, the bottle did not break and the store did not catch on fire. A partially burned dollar bill was found on the floor. Gauze and a cigarette butt were found inside the bottle.
>
> **[\*P7]** Tony called the police, who were dispatched to the scene. On the way to the scene, Officer Jason Berger saw a male (later identified as Joe Whitfield) walking in the vicinity. After receiving a description of the suspects, Berger drove back to where he had seen Whitfield. Berger then saw Whitfield and another man walking behind a carwash. As soon as Berger pulled behind the carwash, the men began running away. Ultimately, Berger was able to apprehend Whitfield, who had a strong odor of gasoline about him. Berger drove Whitfield to the gas station, where Tony stated that he was 60% certain that Whitfield was the one who had thrown the bottle. Whitfield was arrested and searched, and the police found a piece of torn gauze in his pocket.
>
> **[\*P8]** A second arson incident occurred while Whitfield was in custody. At about 12:30 a.m. on April 12, 2013, another attempted arson occurred at the Sunoco gas station. After being told by a customer that the building was on fire, the clerk, Tony, went behind the building and saw that the back door was on fire. Tony

put out the fire and the police arrived at about 1:45 a.m. There was a strong odor of gasoline, as well as charring and flaking on the back door

[*P9] About an hour later, the police arrived at Lackey's home. They were acting on information from a potential witness who had allegedly seen men running from the station and had gotten a license plate number. Lackey allowed the police to search his vehicle for evidence and fingerprints. Lackey claimed that he had arrived home at around 10:00 p.m., and had not been out since. There was no odor of gasoline about the vehicle or on Lackey, and the police did not find any incriminating evidence, like gauze or beer bottles. However, the hood of the vehicle was warm to the touch and there were wet spots on the vehicle. (It had been raining that night.)

[*P10] Both the April 9 and April 12, 2013 arson cases were assigned to Detective Melanie Phelps–Powers. On April 16, 2013, the clerk, Tony, picked out the second person from the April 9, 2013 arson, based on a photo spread. The person he selected was not Lackey, nor was it the photo of any individual who was ever connected to the case.

[*P11] Whitfield gave conflicting statements to the police. Phelps–Powers first interviewed Whitfield on April 17, 2013. At that time, Whitfield told her that he had nothing to do with the April 9, 2013 arson.

[*P12] Whitfield was charged with the April 9, 2013 arson. On April 22, 2013, Whitfield told Phelps–Powers that Lackey had picked him up at his house around midnight on April 9, 2013, and that they were going to a studio to record music. Whitfield had been drinking before he was picked up, and had a few drinks before passing out. He stated that when he woke up, another guy had a gun and was going to throw a fire bomb at the gas station. Whitfield told the detective that the motive was to "shut down" the store that night. In the meantime, Lackey had been arrested on April 19, 2013, solely in connection with the April 12, 2013 arson. The complaint against Lackey was dismissed on April 29, 2013, however.

[*P13] Evidence eventually obtained from Lackey's cell phone records for the night of the April 9, 2013 arson showed calls between Lackey and Whitfield's girlfriend, Latoya, at 4:36 a.m. and a few hours later the same day. Lackey was a friend of Latoya's family and had met Whitfield through Latoya. As a result

of DNA analysis on the cigarette butt that was found in the bottle used in the April 9, 2013 arson, the police also identified an individual named Vaughn Erwin as a potential match. Erwin was Lackey's nephew, and they both worked at King's Furniture Store.

[*P14] Phelps–Powers' theory of the case was that the arsons occurred because of a money dispute between the owner of King's Furniture and Sam, the owner of the Sunoco station. In March 2014, Phelps–Powers visited Whitfield in prison, where he was much more cooperative than he had been previously. At that time, Whitfield positively identified Erwin as the person who had been with him and Lackey the night of the April 9, 2013 arson. During this visit, Whitfield also told Phelps–Powers about a confrontation between King's Furniture and Sunoco.

[*P15] In addition, Whitfield stated that on the night of the April 9, 2013 arson, he was driving around in Lackey's car, smoking marijuana. The bottle of gasoline was in the car. According to Whitfield, Lackey told him that if he did this, he'd "be straight." At trial, Whitfield indicated that he interpreted Lackey's statement to mean that if Whitfield threw the bottle into the station, he would get some money to take care of his family.

[*P16] Whitfield also stated at trial that the plan was that he and the other person with him (whom he alternately admitted and denied having previously identified as Erwin) would get back together with Lackey after the April 9, 2013 arson. However, despite Erwin's attempts to call Lackey, Lackey was not at the spot where they needed him to be. Whitfield and Erwin then got separated because Erwin started running, and Whitfield was apprehended.

The Second District affirmed the conviction, *State v. Lackey*, 2015-Ohio-5492, 55 N.E. 3d 613, 2015 Ohio App. LEXIS 5308 (2nd Dist. Dec. 29 2015), appellate jurisdiction declined, 145 Ohio St. 3d 1460 (2016).

On May 16, 2016, Lackey filed a delayed application to reopen his appeal pursuant to Ohio App. Rule 26(B). After briefing, the Second District Court of Appeals denied reopening on June 28, 2016, and the Ohio Supreme Court declined jurisdiction. *State v. Lackey*, 146 Ohio St. 3d 1516 (2016).

# Analysis

**Procedural Default**

Respondent asserts that the insufficiency of the evidence claim in Ground One and Grounds Two, Three, and Four of the Petition are procedurally defaulted. In his Traverse, Petitioner makes no response to this defense and the Magistrate Judge finds it is well taken.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Smith*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Under Ohio law, a claimed error which can be shown from the face of the record must be raised on direct appeal; otherwise it is barred by *res judicata* from being presented in any other proceeding. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Ohio's doctrine of *res judicata* in criminal cases, enunciated in *Perry*, is regularly enforced by the Ohio courts and is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir.

7

2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307 (12th App. Dist. 1995).

Petitioner does not argue in his Traverse that his failure to present these claims on direct appeal is somehow excused by cause and was actually prejudicial to him. However, he did file an Application for Delayed Reopening of his direct appeal in which he had received ineffective assistance of appellate counsel because his counsel had failed to raise as an assignment of error the insufficiency of the evidence and prosecutorial misconduct (State Court Record, Ex. 26, ECF No. 8, PageID 257). That is the correct procedure to use under Ohio law to litigate a claim of ineffective assistance of appellate counsel. However, Ohio R. App. P. 26(B) requires that an application under that rule be filed within ninety days of final judgment in the court of appeals. In this case the court of appeals found that the ninetieth day was March 28, 2016, and Petitioner's 26(B) application was not filed until May 4, 2016, and was therefore "clearly untimely." *State v. Lackey*, Case No. 28293 (Ohio App. 2d Dist. Jun 28, 2016)(unreported, copy at ECF No. 8, PageID 284, et seq), appellate jurisdiction declined, *State v. Lackey*, 146 Ohio St. 3d 1516 (2016). The court of appeals also found that Petitioner had failed to show good cause for his late filing, essentially arguing that the issues he presented showed ineffective assistance of appellate counsel, or in other words arguing the merits. *Id.* at PageID 286.

In noncapital cases, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley*, 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing

holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009). A petitioner must show more than an occasional act of grace by a state court by a state court in excusing or disregarding a state procedural rule for a federal court to conclude that the state procedural rule is inadequate because inconsistently applied. *Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir. 2002), *citing Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001). Because Petitioner's claim of ineffective assistance of appellate counsel was itself procedurally defaulted, he cannot use that claim to excuse his procedural default in presenting the insufficiency of the evidence argument and Grounds Two, Three, and Four on direct appeal. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Therefore those four claims should be dismissed.

**Ground One: Improper Amendment of the Indictment**

In the first part of his First Ground for Relief, Mr. Lackey asserts the trial court committed constitutional error in amending the indictment during trial. Lackey raised this claim as his Third Assignment of Error on direct appeal and the Second District decided the claim as follows:

> **IV. Amendment of the B Indictment**
>
> **[*P54]** Lackey's Third Assignment of Error states that:
>
> Amending the B Indictment After the Closing of Appellant's Case-in-Chief Was a Material Change and Deprived Appellant of a Fair Trial and Due Process of Law.
>
> **[*P55]** Under this assignment of error, Lackey contends that the trial court erred in permitting the B Indictment to be amended at the close of the State's case, because the amendment was a material

change. Specifically, Lackey argues that the amendment effectively added another charge to the indictment by treating the conspiracy charge in the B Indictment as two separate charges: a conspiracy to commit arson on April 8, 2013, and a conspiracy to commit arson on April 12, 2013.

**[*P56]** The A Indictment charged Lackey with Aggravated Arson, in that he caused physical harm to the Sunoco Station, located at 3900 Salem Avenue, on April 12, 2013. Doc. #7. The B Indictment alleged in Count One that:

> EDDIE LACKEY, between the dates of April 8, 2013 through April 12, 2013 * * * with purpose to commit or promote or facilitate the commission of Aggravated Arson, * * * did plan or aid in planning the commission of such offense with another person or persons and that subsequent to the accused's entrance into said conspiracy, a substantial and overt act in furtherance of said conspiracy was done by him or a person with whom he conspired, to wit; Joe Whitfield threw a Molotov cocktail into 3900 Salem Ave. * * *.

Doc. #62, p. 1.

**[*P57]** The Second Count of the B Indictment alleged that:

> EDDIE LACKEY, between the dates of April 8, 2013, through April 9, 2013, * * * did purposely and knowingly engage in such conduct that, if successful, would have constituted or resulted in the offense of Aggravated Arson * * *.

*Id.*

**[*P58]** After the charge in the A Indictment was dismissed, the trial court let the State amend the First Count of the B Indictment to state that the conspiracy occurred between the dates of April 8 through April 9, 2013. Transcript of Proceedings, Vol. III, pp. 519-520. The basis for this decision was that the jury would no longer be permitted to hear evidence pertaining to the April 12, 2013 arson. In support of its decision, the trial court cited Crim.R. 7(D) and *State v. DeWitt*, 7th Dist. Mahoning No. 09 MA 68, 2010-Ohio-4777, which held that a change of dates in the indictment to conform to evidence at trial did not prejudice the defendant. *Id.* at P 42-46.

**[\*P59]** "The Sixth Amendment to the U.S. Constitution provides an accused in a criminal prosecution the right to be informed of the 'nature and cause of the accusation' against him. This right, like all other Sixth Amendment rights, is part of the due process of law that is guaranteed by the Fourteenth Amendment to all criminal defendants in state court." *State v. Collinsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902, P 15, citing *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**[\*P60]** Section 10, Article I of the Ohio Constitution echoes this right, by guaranteeing "the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." (Citation omitted.) *State v. Headley*, 6 Ohio St.3d 475, 478, 6 Ohio B. 526, 453 N.E.2d 716 (1983), *clarified on other grounds in State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, 980 N.E.2d 1032, P 20-21. "Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." (Citations omitted.) *Headley* at 478-479.

**[\*P61]** Crim.R. 7(D) manifests the essence of this constitutional guarantee. *Id.* at 479. In this regard, Crim.R. 7(D) provides that:

> The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, * * * the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

**[\*P62]** "The purpose of an indictment is twofold. By compelling the government to aver all material facts constituting the essential elements of an offense, an accused is afforded with adequate notice

11

and an opportunity to defend. * * * An indictment, by identifying and defining the offense, also enables an accused to protect himself from any future prosecutions for the same offense." (Citations omitted.) *State v. Sellards*, 17 Ohio St.3d 169, 170, 17 Ohio B. 410, 478 N.E.2d 781 (1985).

**[\*P63]** Amendments are not permitted where they alter an offense's degree or penalty. In these circumstances, the amendment "changes the identity of the offense." *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, P 9.

**[\*P64]** Before Count One was amended, the State was required to prove that Lackey, with another person, planned or aided in the planning of Aggravated Arson, and that after Lackey entered into the conspiracy, a substantial act in furtherance of the conspiracy was done by Lackey or by another person with whom he conspired. The substantial act outlined in Count One was that Whitfield threw a Molotov cocktail into 3900 Salem Avenue. *See* Doc. #62, p. 1; R.C. 2923.01(A)(1); and R.C. 2909.02(A)(1). The substantial act occurred on April 9, 2013.

**[\*P65]** An indictment is "sufficient if it can be understood that the offense was committed at some time prior to the time of the filing." *Sellards* at 171. "Ordinarily, precise times and dates are not essential elements of offenses." *Id.* Thus, the precise date on which Lackey conspired with Whitfield was not an essential element. However, with respect to the April 9, 2013 arson, the conspiracy would have had to occur prior to the time the arson was attempted.

**[\*P66]** As an example of the fact that dates are not essential elements, the indictment in *Collinsworth* stated that a rape victim had been assaulted between certain dates in 1997. *Collingsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902, at P 5. However, the evidence at trial indicated that the victim was not living in Ohio at the time. *Id.* at P 6. As a result, the court granted an amendment at the close of the State's case, to provide that the alleged rapes occurred in 1996. *Id.* at P 7.

**[\*P67]** The court of appeals concluded that the trial court did not err by allowing the amendment, because the amendment did not change the name or identity of the charges, and was also not a change to the substance of the indictment. *Id.* at P 24 and 34-35. In addition, the court found no prejudice even if the amendment had been substantive, because the defendant had confessed to having had sexual relations with the victim. *Id.* at P 36 [footnote omitted].

[*P68] In contrast, in *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994), the court of appeals found that the amendment of dates in an indictment violated Crim.R. 7(D). *Id.* at 700-701. In *Vitale*, the indictment alleged that a theft had occurred on June 14, 1991. However, the State was allowed to amend the indictment at the conclusion of its case to specify that the theft was committed from June 14, 1991 through June 21, 1991. *Id.* at 698-699.

[*P69] In rejecting the amendment, the court of appeals stressed that:

> The indictment herein only specified the date of the offense as on or about June 14, 1991. The defense sought a bill of particulars. "[T]he state must, in response to a request for a bill of particulars * * * supply specific dates and times with regard to an alleged offense where it possesses such information * * *." *State v. Sellards* (1985), 17 Ohio St.3d 169, 17 OBR 410, 478 N.E.2d 781, syllabus. In response, the state's bill of particulars further specified that the offense occurred "on or about June 14, 1991 at approximately 12:00 p.m., at the location of 1869 East 79th Street, in the City of Cleveland, Ohio." If the state had knowledge that the offense charged could also have occurred on June 21 at Amos' home, then it was obliged to so state. Since it didn't, it must be presumed that the evidence presented to the grand jury was limited to the June 14 episode identified in the state's bill of particulars and not some other date, time or place to which no reference is made.

*Vitale* at 699-700.

[*P70] The court of appeals concluded that the defendant was prejudiced because there was a grave risk that he had been convicted of a felony on evidence that had not been presented to the grand jury. *Id.* at 699. The court further found that the identity of the crime had been changed, stating that:

> Obviously, if the identity of the crime moves from events on June 14 to different events on June 21, at a different time and place, the identity of the crime has been improperly changed. Where the amendment to an indictment requires proof of an essential factual element which the original indictment did not, "the amendment of

> the indictment changed the identity of the crime charged in contravention of Crim.R. 7(D)."
>
> *Id.* at 701, quoting *State v. Woody*, 29 Ohio App.3d 364, 365, 29 Ohio B. 493, 505 N.E.2d 646 (1st Dist.1986).
>
> **[*P71]** The circumstances in the case before us are unlike those in *Vitale*, and the amendment did not change the identity of the crime with which Lackey was charged. A reading of Count One of the B Indictment leaves no doubt as to the elements of the crime with which Lackey was being charged. The amendment to conform to the evidence actually narrowed, rather than increased, the time frame in question, and did not prejudice Lackey. The indictment indicates that the crime in question was conspiracy with respect to the fire that occurred on April 9, 2013, and the events of April 8 and 9, 2013, were clearly encompassed within the evidence the grand jury considered. The only effect of the amendment was to narrow the time frame the jury considered, to conform to the evidence that the jury was permitted to consider. *Compare State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002-Ohio-3490, 2002 WL 1438648 (July 5, 2002) (noting that "*Vitale* stands for the proposition that the state 'should be restricted in its proof to the indictment and the particulars as set forth in the bill.'"). 2002-Ohio-3490 at *3, quoting *Vitale*, 96 Ohio App.3d at 700, 645 N.E.2d 1277. (Other citation omitted.)
>
> **[*P72]** In *Honeycutt*, we distinguished *Vitale*, observing that the State had restricted its proof to the indictment and the bill of particulars. *Id.* Similarly, the State in the case before us restricted itself to what was included in the B Indictment, and the trial court did not violate Crim.R. 7(D) by permitting the amendment after the charge in the A Indictment was dismissed.
>
> **[*P73]** Based on the preceding discussion, the Third Assignment of Error is overruled.

*State v. Lackey*, supra.

In his Traverse, Petitioner recognizes the first legal proposition that applies: when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States

14

Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

In addition, federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida*, 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Mr. Lackey's Third Assignment of Error in the Second District presented questions of both federal and state law; this Court can only review the claimed errors of federal constitutional law.

Applying this law to Mr. Lackey's case, the Magistrate Judge first notes that there is no federal constitutional right to grand jury indictment in state court. The Supreme Court has consistently held for more than one hundred years that Grand Jury Clause of the Fifth Amendment is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh*, 420 U.S. 103 (1975). Thus to the extent Mr. Lackey is claiming that the amendment to the B indictment violated his right to grand jury indictment under the Fifth Amendment, his claim is not cognizable in habeas corpus because there is no such right. There is a right to grand jury indictment under the Ohio Constitution, but this Court cannot review the Second District's decision on whether the amendment violated that state constitutional right.

Mr. Lackey relies on *Ex parte Bain*, 121 U.S. 1 (1887)(Traverse, ECF No. 13, PageID

15

1063). However, *Bain* referred only to the Fifth Amendment right to indictment as it applies to persons charged with federal crimes. In any event, *Bain* has been expressly overruled by the Supreme Court. *United States v. Cotton*, 535 U.S. 625 (2002).

In addition to the Fifth Amendment, Mr. Lackey relies on the Sixth Amendment requirement of fair notice and the Fourteenth Amendment's Due Process Clause. *Russell v. United States*, 369 U.S. 749 (1962), holds the sufficiency of an indictment is to be measured by the following criteria:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

369 U.S. at 763-64. While the right to grand jury indictment has not been extended to the States, these criteria are applicable as a matter of due process. *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005).

The effect of the amendment[1] to the B indictment was to narrow the dates of the alleged conspiracy. The Second District found this made the notice to Mr. Lackey more precise. He does not advise the Court why this would have made it more difficult for him to defend, nor did he ask for a continuance to adjust his defense. This case is therefore unlike the child sexual abuse charges in *Valentine* and in similar cases where the victim's memory for precise dates is compromised but the defendant may need precise dates for alibi purposes or otherwise to test the victim's credibility.

Petitioner has not shown that the Second District's decision on the federal constitutional questions involved was contrary to or an objectively unreasonable application of clearly

---
[1] Lackey refers to it as a "constructive" amendment, but it was quite express and done on the record.

established United States Supreme Court precedent.  Therefore the First Ground for Relief should be denied.

**Conclusion**

On the basis for the foregoing analysis, it is respectfully recommended that the Petition herein be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 12, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).